UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:

GINA BYERS AND JEREMY BYERS,   CASE NO. 20-10946-JCO
                                Chapter 13

DEBTORS.

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Motion of Campers & More, LLC seeking relief from the automatic stay imposed by 11 U.S.C. §362 (the "Motion")(Doc.34) and the Reply Brief of Gina and Jeremy Byers. (Doc. 36). Proper notice of hearing was given and appearances were noted by Attorney William C. Poole as counsel for Campers & More, LLC and Attorney Kevin Ryan as counsel for Debtors, Gina and Jeremy Byers. Having considered the Record, the Motion, the Reply Brief, the Stipulation of Facts (Doc. 52) and the statements of counsel for the parties, the Court finds that the Motion is due to be and is hereby DENIED for the following reasons:

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (G).

## FINDINGS OF FACT

The parties submitted a Joint Stipulation of Facts ("Stipulation") which the Court has considered and references herein as denoted. (Doc 52). On or about October 18, 2018, the Debtors, Gina and Jeremy Byers (the "Byers"), entered into an agreement with Campers &

1

More, LLC ("Creditor") entitled, "Lease Purchase Agreement" (the "Contract") for a 2008 Forest River Wildcat Recreational Vehicle (the "RV"). (*Id.* at ¶1). The Contract reflects the purchase price for the RV as $12,900.00 and a monthly lease rate of $430.00 plus taxes. (Doc. 52 at 6). It further provides for a purchase option consisting of 60 monthly payments of $447.73.(*Id.* at 7). The Contract also contains the following provisions:

> . . .Title remains at all times in the owner. Lessor and Lessee agree that the transaction embodied by this Agreement is a LEASE TRANSACTION. The parties further agree that title to the subject property will at all times remain with the Lessor, unless and until those provisions found in the Purchase Option below are met by the Lessee . . .

(*Id.* at 6 ¶1).

> . . . Lessee may terminate this Agreement at any time. To do so, Lessee must contact Lessor and request the subject property be picked up, and make all lease payments due through the date of return.. . .

(*Id.* at 6 ¶5(a)).

> . . . **Purchase Option.** At any time during the term of this agreement Lessee may at its sole discretion exercise an option to purchase lease property. To do so, Lessee must notify the Lessor of its intention to purchase property. Lessor shall calculate a "purchase amount" by reducing the original purchase price of the property by 50% of the monthly payments, before taxes, due under the agreement. In addition, amounts due/overpaid from previous rental payments required under the contract must be added to/deducted from the "purchase amount" to obtain the "net purchase" amount . . .

(*Id.* at 6 ¶6).

It is undisputed that although the collateral is described as a recreational vehicle, it is the Byers' homestead. (Doc. 52 at 1, ¶1). Creditor's affidavit indicates that as of May 21, 2020, a lease payment delinquency of $1645.96 existed, the value of the RV was $11,350.00, the Byers' purchase option amount was $9429.10 and the costs of continuing the lease until the end of the term was approximately $18,356.93 (consisting of 41 remaining payments of $447.73

each). (Doc. 42). The Byers' Chapter 13 Plan (Doc. 2) treats the debt to Creditor as a secured claim, proposes to pay one hundred percent (100%) of the principal amount and provides adequate protection and specified monthly payments. (Doc. 2; Doc. 52 at 2 para 9, 10). No other pertinent facts are in dispute and this matter is ripe for adjudication by this Court based upon the Record, pleadings and Stipulation.

## **CONCLUSIONS OF LAW**

The issue presented is whether relief from the automatic stay is appropriate based upon Creditor's assertion of delinquency under the terms of a lease purchase agreement when Debtors propose to exercise the option to purchase in the contract and treat the debt as a secured claim to be paid through their Chapter 13 plan.

### Nature of Creditor's Interest Affects Analysis

The starting point in assessing a request for relief from the automatic stay is evaluating the respective interests of the parties. 11 U.S.C. §362(d). When the interests of the parties arise from a true lease, Section 365 of Bankruptcy Code is applicable to the analysis. It provides in pertinent part:

> …the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. §365 (a),(b)(1).

3

Hence, when there is a dispute concerning if a transaction constitutes a lease or security interest, the Court must adjudicate that issue first in order to apply the appropriate statutory provision to the motion for relief analysis. The title of a document purporting to be a lease is not dispositive. In determining whether a contractual agreement is a lease or security instrument the Court must look to applicable state law. *Lewis* v. *Manufacturers National Bank*, 364 U.S. 603, 609, 81 S. Ct. 347,350, 5 L.Ed. 29 323 (1961); *Butner v. United States*, 440 U.S. 48,54-55, 99 S.Ct. 914, 59 L. Ed. 136 (1979); *In re HB Logistics, LLC*, 460 B.R. 291 (Bankr. N.D. Ala. 2011).

Bright-Line Test

Pursuant to Alabama law, "[w]hether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case. Alabama Code § 7-1-203 provides a roadmap for determining if an agreement purporting to be a lease should be deemed a *per se* security interest. Specifically, it states in pertinent part:

> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>   (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
>   (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>   (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>   (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement . . .

Ala. Code §7-1-203(b).

Accordingly, in order for a contract to be deemed a security agreement *per se*, two prongs must be met: (1) the payment obligations must not be subject to termination by the lessee

4

Case 20-10946    Doc 61    Filed 08/03/20    Entered 08/03/20 13:36:56    Desc Main
Document      Page 4 of 11

before the end of the lease and (2) at least one of the conditions set forth in §7-1-203 (b)(1),(b)(2), (b)(3) or (b)(4) must exist. The Official Comments as well as courts interpreting Ala Code §7-1-203 have explained that the statutory language creates a "Bright-Line Test" which focuses on the economics of the transaction. *Pipkin v. Sun State Oil, Inc*., 273 So.3d 828 (Ala. 2018). Hence, the fact that the agreement contains lease terminology is not controlling. *Id.*

Strict application of the Bright-Line Test to the terms of the Contract in this case does not warrant a finding of a *per se* security instrument. In evaluating the initial prong of the Bright-Line Test, the Court notes that the Contract allows the Lessee to terminate at any time and only requires payments through the date of return. (Doc. 52 at 6, ¶5). Hence, the ability of the Byers to terminate the Contract at any time with essentially no further obligation upon return of the collateral, prevents a finding of a *per se* security agreement under Alabama Code §7-1-203. However, failure to meet the Bright-Line Test alone does not preclude a finding that the Contract should be treated as a security instrument.

Economic Realities Assessment

Various courts have held that when a contract is not deemed to be a security interest *per se*, the facts of the case must be examined to determine if an economically meaningful interest was reserved to the lessor at the end of the lease term. *In re HB Logistics, LLC*, 460 B.R. 291, 30 (Bankr. N.D. Ala. 2011)(citing *In re Wayne*, 2011WL1303425 (Bankr. D. Kan); *see also*, *In re Johnson*, 2015WL1508460 (Bankr. S.D. Miss.)(explaining when the Bright-Line Test is not satisfied and there is no security agreement *per se*; the Court must determine whether lessor retained a meaningful reversionary interest). Courts evaluating whether the lessor retained a meaningful reversionary interest have assessed: (1) whether the option price is nominal and (2) if the purported lessee could acquire equity in the goods. *In re Johnson* at 5 (citing, *In re Ladieu*,

2011 WL 748566 at 15 (Bankr. D.Vt. 2011); *In re Worldcom Inc*., 339 B.R. 56. (Bankr. S.D. N.Y. 2006).

An assessment of the economic realities of the transaction in this case favors a finding that the Contract is more akin to a security agreement than a true lease. Pursuant to the terms of the Contract, the Creditor did not retain any residual interest in the collateral at the end of the sixty-month term. (Doc.52 at 7). Upon completion of the purported lease payments, the Byers are not required to return the collateral, renegotiate purchase terms or remit further substantive payment. (Doc. 52). Additionally, the Contract contains an alternative purchase option ("APO") allowing the Byers to purchase the collateral in their sole discretion at any time by paying fifty percent (50%) of the monthly payments. (*Id. at 7*). There is no requirement that the Byers be current on the monthly payments to exercise the APO. In fact, the Contract provides that if the Byers' monthly payments are past due, the delinquency is added to the purchase amount. (*Id.* at 7).

Moreover, it appears to the Court that upon exercise of the APO, the Byers have quantifiable equity in the RV. Specifically, the Creditor's affidavit avers that the retail value of the RV is Eleven Thousand, Three Hundred and Fifty Dollars and 00/100ths ($11,350.00) and the amount necessary to purchase the RV is Nine Thousand, Four Hundred and Twenty-Nine Dollars and 10/100ths ($9429.10). (Doc.42 ). Therefore, the economic realities of the transaction support a determination that the Contract should be treated as a security agreement.

### Functional Approach

Further, recent decisions in this jurisdiction have employed what has been termed a "functional approach" in deciding whether to treat a contract for deed as a secured claim subject to cure and reinstatement rather than as an executory contract which requires assumption or rejection. *In re Nolan*, 2018 WL 10345331 (Bankr. S.D. Ala*.); In re Curtis*, 500 B.R. 122 (N.D.

Ala. 2013). Under the functional approach, it is the consequences of applying §365, not the form of the contract, which controls. *In re Booth*, 19 B.R. 53 (Bankr. D. Utah 1982). The Eleventh Circuit Court of Appeals has seemingly endorsed this approach and explained that whether a particular agreement should be treated as a lease or a security agreement often depends on which characterization will best serve the interests of the estate. *In re General Development Corp.*, 84 F.3d 1364 (11th Cir. 1996)(citing *In re Martin Toolmakers, Inc.*, 796 F. 2d 1435 (11th Cir. 1986).

*In re Curtis*, cited by the Debtors, illustrates application of the functional approach. 500 B.R. 122 (N.D. Ala. 2013). The *In re Curtis* decision held that an agreement for deed should be treated as a security instrument. The opinion noted that treating the agreement as an executory contract would require assumption or rejection and prompt cure while treating it as a secured claim would allow the debtor to cure the arrears over the life of the plan and maintain ongoing payments. *Curtis* at 127. The Court recognized that preserving the chapter 13 consumer debtor's residence is of the utmost importance to the estate and the success of the chapter 13 plan. *Id.* at 126. Thus courts applying the functional approach have held that 11 U.S.C. §365 should be conceptualized as a tool of the debtor, to benefit the estate at the debtor's option whenever possible, and should rarely, if ever, be used as a basis to deprive a consumer-debtor of a residence. *In re Fox*, 83 B.R. 290 (Bankr. E.D. Pa. 1988).

The functional approach supports finding that the Contract between Creditor and the Byers should be viewed as a security instrument. Although many cases applying the functional approach have done so with regard to contracts for deed, installments sales contracts and similar arrangements involving real property, this Court nonetheless finds the functional approach applicable because the Contract in this matter involves the Byer's home[1]. *See generally*, *In re*

---

[1] Further the Court notes that 11 U.S.C. §1322(b)(2) is not applicable to the analysis since the Contract does not pertain to realty.

*General Development*, 84 F.3d 164 (11th Cir. 1996) (involving installment sales contract); *In re Nolan*, 2018 WL 10345331 (Bankr. S. D. Ala. 2018) (involving contract for deed); *In re Curtis*, 500 B.R. 122 (N.D. Ala. 2013) (involving an agreement for deed).

Treating the Contract as a lease in this case would contravene the functional approach. Particularly, it would require the Byers to meet the requirements of 11 U.S.C.§365 and enlist the assistance of the Trustee in lease assumption efforts[2], tender prompt cure and expend funds in excess of the presently proposed plan amount. Additionally, in the event the Contract is deemed a lease, to avoid losing their home, the Byers would be required to pay: (1) over twice the initial purchase price of the RV[3]; (2) almost double the amount necessary to exercise the APO[4] and (3) significantly more than the RV's present value.[5] Further, allowing the Byers to pay the debt on their homeplace as a secured debt through the bankruptcy case, allows them to keep their home without a lump sum, up front cure of arrears and yields lower monthly payment for the Debtors to fund their plan. Hence, the interests of the Debtor and the Estate are best served by treating the Contract as a security instrument. Moreover, a finding that the Contract is a security interest essentially affords the Creditor the benefit of its bargain because it will still receive the principal amount it would have upon the Byers' exercise of the APO at an interest rate allowed by applicable bankruptcy law. Accordingly, this Court finds that application of the functional approach, consistent with other rulings in this jurisdiction, warrants treatment of the Contract as a security instrument for purposes of this proceeding.

---

[2] 11 U.S.C. §365; See also, *In re Cumbess*, 960 F. 3d 1325( 11th Cir. 2020)(holding if a lease of personal property is rejected or not timely assumed by the Trustee . . .the leased property is no longer property of the estate.)
[3] The original purchase price stated on the Contract is $12,900.00. (Doc. 34 at 3). Since the Contract called for 60 equal monthly payments and the Creditor's affidavit reflects 41 remain, the Court has deduced that the Debtors previously remitted 19 payments of $447.73 each, totaling $8506.87.
[4] The Creditor's Affidavit reflects $9429.10 as the amount necessary to exercise the purchase option, which has been referred to herein as the APO. (Doc 42).
[5] The Creditor's Affidavit avers that the retail value of the RV is $11,350.00 and if the Debtor's continued to make lease payments to the end of the term, they would pay $18,356.93. (Doc. 42).

8

### Import of Designations on Certificate of Title

Although the Court deems the aforementioned analysis sufficient to treat the Contract as a de facto security interest, the designations on the certificate of title further validate such finding. The Alabama Supreme Court has recognized that a distinction between a true lease and a conditional sale is that in a lease, the lessee never owns the property. *Pipkin v. Sun State Oil, Inc.*, 272 So.3d 828 (Ala. 2018). Rather, the lease grants the lessee the right to use property for a period less than its economic life with the concomitant obligation to return the property to the lessor. *Id.* at 843. See also *Sharer v. Creative Leasing Inc*, 612 So.2d 1191 (Ala. 1993)(noting that a principal characteristic of a lease is that the lessee never owns the property).

Additionally, the applicable statutory scheme set forth in the Alabama Uniform Certificate of Title and Antitheft Act related to security interests provides that a certificate of title is the exclusive method to perfect an interest in a motor vehicle. *Ala. Code* §32-8-66. Further, the provision of the Alabama Code delineating the effect of a certificate of title provides in pertinent part, " [A] certificate of title issued by the department is prima facie evidence of the facts appearing on it". *Ala. Code* § 32-8-39(d); *Carolina Cas. Ins. Co. v. Williams*, 945 So.2d 1030, 1034-35 (Ala. 2006)(explaining that in Alabama, the manner in which a vehicle is titled is prima facie evidence of ownership).

The facts of this case support a finding that the Contract should be treated as a security instrument pursuant to Alabama law. As discussed above, upon completion of the *purported* lease payments, the Byers had no obligation to return the RV. Further, the Court finds the designation of the Byers as the owners of the RV on the certificate of title most instructive in the determination of the Creditor's interest. Unlike a typical lease transaction wherein the lessor retains ownership on the title, it is undisputed that the certificate of title ("COT") for the RV

reflects the Byers as the owners and the Creditor as the lienholder. (Doc. 52 at 9). Although the status of the COT may conflict with some terminology in the Contract, the Court finds it appropriate to give more weight to the COT designation. Hence, in the view of the Court treating the transaction as a security agreement, consistent with the recitation on the COT is appropriate.

Sufficient Cause Does Not Exist To Grant Relief from the Automatic Stay

Having found that the Contract should be evaluated as a security instrument, the Court now turns its consideration to analysis of the Creditor's espoused grounds for relief from the automatic stay. The Bankruptcy Code provides in pertinent part:

> . . . the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> **(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;
> **(2)** with respect to a stay of an act against property under subsection (a) of this section, if--
> **(A)** the debtor does not have an equity in such property; and
> **(B)** such property is not necessary to an effective reorganization

11 U.S.C. §362(d)(1)(2).

The Creditor asserts that the Debtors do not have any equity in the RV and that the payments are in default. However as the Creditor's affidavit indicates that the RV's retail value is $11,350.00 and the amount due under the purchase option (which this Court has deemed applicable) is $9429.10, such calculation reflects that the Byers have approximately sixteen percent (16%) equity in the RV. Further, even if the Byers did not have equity in the property, it is undisputed that the RV is their homestead and thereby necessary for an effective reorganization. Additionally, the Byers are proposing to pay one hundred percent of the principal balance owed under the APO over the term of their Chapter 13 plan with interest,

adequate protection payments and specified monthly payments to Creditor. Since the Byers are paying the debt through the plan, the Court does not deem contractual default alleged by Creditor relevant to the present analysis. Moreover, the payment of the principal amount of the Creditor's claim at an interest rate allowed by applicable bankruptcy law together with adequate protection payments and specified monthly payments, in the view of the Court, constitutes adequate protection of the Creditor's interest. Therefore, the Court does not find evidence of sufficient weight to constitute cause or otherwise warrant lifting, modifying or annulling the automatic stay at this time.

## **CONCLUSION**

Accordingly, based upon the forgoing, this Court finds that the Motion for Relief from the automatic stay imposed by 11 U.S.C. §362 filed by Campers and More, LLC (Doc. 34) is due to be and is hereby DENIED.

Dated: August 3, 2020

_____
JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE